# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| TRINITY MORAN, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>INSURANCE PROTECTION SPECIALISTS,<br><br>    Defendant. | CIVL ACTION NO.<br><br>2:25-cv-00258 |

### DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT

Defendant, Insurance Protections Specialists ("IPS"), offers final expense insurance. IPS does not use auto-dialers reach out to potential clients. IPS relies on lead generation done by a third-party under the promise of TCPA-compliance, which was the case here.

On February 28, 2025, Plaintiff, Trinity Moran, fraudulently identifying herself as Mary Duran, requested information regarding final expenses insurance. **Exhibit A, an unofficial transcript of Plaintiff's call requesting contact.**[1] During this call, she was specifically informed that she would receive a call "Even if [her] number is registered on any state federal national Do-Not-Call list." To which Moran responded, "Okay. Yes. That would be wonderful. Thank you so much." **Exhibit A (2:30-2:45).**

On March 22, 2025, at 10:30 am, in response to Moran's inquiry, April Lau, an independent contractor, reached out to "Mary Duran" at the number provided by Moran in the previous phone call. She was informed that "Mary" was "unavailable." April informed Moran at

---

[1] Recording is available to the court upon request. Record was provided to Opposing Counsel at the time of filing.

that time that she would attempt to reach Mary by text message instead, to which Moran did not object. At 10:37 am, April sent a singular text message providing her name, callback number, and purpose for calling. Pl.'s. Compl., ¶ 31. By 10:49 am, Moran responded to April, claiming to be "Mary" and stating that she was "actually 23 years old and on the do not call list. Do you have a good contact for your company? Attached is a TCPA complaint." **Exhibit B.**

Essentially, Moran requested a callback regarding final expenses insurance under a false name, then immediately attempted to extort the person from whom she requested that call by abusing the legal system.

### BACKGROUND

IPS knows that this Court is well familiar with the TCPA. Nevertheless, to put Moran's claims in context, IPS highlights some relevant TCPA background, statutory provisions, and regulatory enactments. After discussing this legal landscape, IPS turns to the specifics of this case.[2]

#### A. *Congress passes the TCPA and the FCC issues regulations.*

"In enacting the TCPA, Congress found that '[u]nrestricted telemarketing' can be 'an intrusive invasion of privacy.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (quoting TCPA, § 2, ¶ 5, 105 Stat. 2394, note following 47 U.S.C. § 227 (Congressional Findings)). For example, Congress found that "automated or prerecorded telephone calls made to private residences were rightly regarded by recipients as an invasion of privacy." *Id.* (internal quotation marks and citations omitted). Congress passed the TCPA to protect against such intrusions. See *id.*

---

[2] Because this motion is brought under Rule 12(b)(6), JR Capital limits this background discussion to the complaint and matters of which the court may take judicial notice. See OFI Asset Mgmt. v. Cooper Tire & Rubber, 834 F.3d 481, 490 (3d Cir. 2016).

Unfortunately, as the former Chairman of FCC has observed, "the TCPA has strayed far from its original purpose." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961 (2015) (Pai, dissenting) (overruled in part by *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018)). The TCPA has "become the poster child for lawsuit abuse." *Id.*

Regardless, in passing the TCPA, Congress authorized the FCC to implement certain regulations. For example, Congress directed the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). Congress stated that such regulations "may require the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations." 47 U.S.C. § 227(c)(3). In addition, Congress created a private right of action to enforce section 227(c). Specifically, Congress stated that a "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of# the regulations prescribed under this subsection" may bring "an action based on [the] violation of the regulation prescribed under this subsection." 47 U.S.C. § 227(c)(5).

Pursuant to Congress's instruction, the FCC created the national Do Not Call registry. To implement the national Do Not Call registry, the FCC issued a regulation providing that "[n]o person or entity shall initiate any telephone solicitation to…[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 CFR § 64.1200(c).

Turning back to the statute itself, the TCPA also contains a provision titled "[t]echnical

and procedural standards." 47 U.S.C. § 227(d). This provision states that "[i]t shall be unlawful" to "make any telephone call using any automatic telephone dialing system[] that does not comply with the technical and procedural standards prescribed under this subsection." 47 U.S.C. § 227(d). In addition, this provision states that the FCC "shall prescribe technical and procedural standards for systems that are used to transmit any artificial or prerecorded voice message via telephone." 47 U.S.C. § 227(d)(3). Unlike the provision instructing the FCC to undertake rulemaking to protect residential subscribers' privacy (which led to the creation of the Do Not Call registry), the "technical and procedural standards" provision does not provide a private right of action. 47 U.S.C. §§ (c)(5), 227(d).

Still, the FCC has recognized that Caller ID can "improve the ability of consumers to identify and enforce do-not-call rights"—i.e., rights arising under a TCPA provision that does provide a private right of action for calls to residential phone numbers. See *In re Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991*, 68 FR# 44144-01 ¶ 65; 47 U.S.C. § 227(c)(5). In regulations separate from the regulation implementing the Do Not Call Registry, the FCC has issued regulations on Caller ID.#

One of those regulations is 47 CFR § 64.1601.

It is, to put it mildly, highly technical. Section 64.1601 provides that "telecommunications carriers and providers of interconnected Voice over Internet Protocol (VoIP) services, in originating interstate or intrastate traffic on the public switched telephone network (PSTN) or originating interstate or intrastate traffic that is destined for the PSTN (collectively 'PSTN Traffic'), are required to transmit for all PSTN Traffic the telephone number received from or assigned to or otherwise associated with the calling party to the next provider in the path from the originating provider to the terminating provider." 47 CFR § 64.1601(a).

Additionally, section 64.1601 states that telemarketers "must transmit caller identification information." 47 CFR § 64.1601(e). Under section 64.1601(e), "caller identification information must include either CPN [the calling party number] or ANI [the calling party's billing number from the local exchange carrier], and, when available by the telemarketer's carrier, the name of the telemarketer." 47 CFR §§ 64.1600, 1601(e)(1). Section 64.1601(e) further states that "[t]he telephone number so provided must permit any individual to make a do-not-call request during regular business hours." *Id.*

As indicated, section 64.1601 relates to calls placed through on the public switched telephone network. 47 CFR § 64.1601(e)(1). And the FCC has recognized that "the public switched network itself is not one that generally supports text messaging." *In re Petitions for Declaratory Ruling on Regulatory Status of Wireless Messaging Service*, FCC 18-178, Docket No. 08-7 ¶ 33 n. 109 (December 13, 2018). The public switched telephone network traditionally connects voice calls between landlines. See *id.*

**B.  *Moran seeks recovery under the above statutory and regulatory provisions for text messages sent to Defendant.***

As noted at the outset, Moran challenges a text messages that she says violate TCPA restrictions on communications to residential phone numbers. Moran seeks to pursue these claims on a class-wide basis. And, to support that effort, Moran tells this Court that the phone number on which she allegedly received the text messages "is a residential, non-commercial number." Plaintiff's Class Action Complaint and Demand for Jury Trial ("Pl.'s Compl."), ECF No. 1, ¶ 22.

She alleges a violation of the Caller ID requirements in 47 CFR § 64.1601(e).4 Id., ¶¶ 14, 24-26, 51. In her Caller ID claim, Moran alleges that (a) IPS's telephone carrier allows customers to transmit their names, in addition to their location information, along the phone network

through a Caller ID function and (b) IPS did not elect this functionality. See id., ¶¶ 34-36. As a result, Moran alleges that IPS violated section 64.1601(e). Moran seeks to represent a class of individuals who received "telemarketing calls or text messages." Id., ¶ 42.

In making this claim, Moran does not allege that the calls or text messages she received lacked identifying information or contact number for IPS. On the contrary, Moran specifically includes screenshots showing that the text messages contained that information. Id., ¶ 31. Furthermore, Moran fails to allege that she received any such calls on a landline.

IPS moves to dismiss Moran's Caller ID claim.

### LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); Fed. R. Civ. Proc. 12(b)(6). "In determining whether a [plaintiff's]…complaint states a claim under Rule 12(b)(6), we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp*, 908 F.3d 872, 878 (3d Cir. 2018). But "we disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Id.*

### ARGUMENT

Moran's Caller ID claim fails on the pleadings for two reasons. First, Moran has failed to sufficiently allege—and cannot plausibly allege—a violation of 47 CFR § 64.1601. That section does not apply to wireless communications like the text message Moran challenges, and, even if it did, the text messages Moran challenges contained the very information Moran complains IPS failed to provide. Second, as federal courts have repeatedly found, there is

no private right of action for violation of 47 CFR § 64.1601. For either or both reasons,

Moran's Caller ID claim should be dismissed with prejudice.

   **A.  *Moran fails to allege a plausible claim for violation of 47 CFR § 64.1601.***

   Moran's Caller ID claim is insufficiently pled for at least two important reasons.

First, 47 CFR § 64.1601 does not apply to wireless communications like the text

messages challenged here. As the Third Circuit has long stressed, "[t]he basic tenets of statutory

construction hold true for the interpretation of a regulation." *Burns v. Barnhart*, 312 F.3d 113,

125 (3d Cir. 2002). Therefore, in interpreting regulations, courts look to "the plain wording of

the regulation." *Id.*

   In this case, section 64.1601 imposes requirements for communications over "the public

switched telephone network (PSTN)." 47 CFR § 64.1601(a). Yet Moran does not allege he

received the challenged text messages over the public switched telephone network. Nor could

he. As the FCC has stated, text messages generally do not travel over the public switched

telephone network. See *In re Petitions for Declaratory Ruling on Regulatory Status of Wireless

Messaging Service*, FCC 18-178, Docket No. 08-7 ¶ 33 n. 109 (December 13, 2018) ("the public

switched network itself is not one that generally supports text messaging").

   To be sure, Moran alleges that IPS's telephone carrier allows customers to

transmit their names, in addition to their location information, through a Caller ID function, and

that, in violation of section 64.1601(e), IPS did not sign up for this functionality. See *id.,*

¶¶ 24-26. Again, though, Moran does not connect these allegations to the text messages she

allegedly received. Instead, Moran asserts only that her counsel allegedly took the initiating

phone number for the text messages, allegedly plugged it into a database, and allegedly

determined that, when a call does come from that number through the public switched telephone

network, the information transmitted within the public switched telephone network allegedly

does not include the caller's name. Pl.'s Compl., ¶¶ 34-35.

That's not enough. Indeed, those allegations do not even reach the level of the infamously insufficient "unadorned, the-defendant-unlawfully-harmed-me accusation." See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); cf. *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 379 (2024) ("As Justice Scalia memorably said, Article III requires a plaintiff to first answer a basic question: 'What's it to you?'") (quoting A. Scalia, The Doctrine of Standing as an Essential Element of the Separation of Powers, 17 Suffolk U. L. Rev. 881, 882 (1983)) (some internal quotation marks omitted). Here, Moran fails to allege that IPS's alleged failure to comply with section 64.1601(e) harmed her.

Second, and on a related point, even if section 64.1601(e) could apply to text messages, Moran has not alleged that the text messages she received failed to include the information required under section 64.1601(e). As noted, section 64.1601(e) states that "when available by the telemarketer's carrier," caller identification information must include "the name of the telemarketer." 47 CFR §§ 64.1600, 1601(e)(1). Here, as the screenshots in Moran's complaint show, the challenged text messages included IPS's name. Pl.'s Compl., ¶ 31.

In sum, Moran has not sufficiently alleged—and cannot plausibly allege—a violation of 47 CFR § 16.6401(e). For this reason alone, this Court can dismiss Moran's Caller ID claim. As discussed below, there is an alternative basis on which to dismiss Moran's Caller ID claim. There is no private right of action for that claim.

**B. There is no private right of action for a violation of 47 CFR 16.6401.**

"Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). In determining whether Congress has created a private right of action to enforce a statutory provision, "[s]tatutory intent…is determinative." *Id.* "When Congress enacts a statute, there are specific

procedures and times for considering its terms and the proper means for its enforcement." *Ziglar v. Abbasi*, 582 U.S. 120, 133 (2017). "It is logical, then, to assume that Congress will be explicit if it intends to create a private cause of action." *Id.*

In enacting the TCPA, Congress created a private right of action to enforce some provisions and declined to create a private right of action to enforce others. In 47 USC § 227(c), for example, Congress instructed the FCC to issue regulations "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c). Congress directed that this proceeding shall "compare and evaluate alternative methods and procedures (including the use of electronic databases, telephone network technologies, special directory markings, industry-based or company-specific 'do not call' systems, and any other alternatives, individually or in combination) for their effectiveness in protecting such privacy rights, and in terms of their cost and other advantages and disadvantages." 47 U.S.C. § 227(c)(1)(A). In the end, though, Congress said that the FCC "may require the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations." 47 U.S.C. § 227(c)(3). Congress created an express private right of action under section 227(c). 47 U.S.C. § 227(c)(5)

"Pursuant to [the] authority under section 227(c), [the FCC] adopt[ed] a national do-not-call registry." *In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14034 (2003). The FCC implemented the national Do Not Call registry in 47 CFR § 64.1200(c). In the TCPA, Congress did not create a private right of action to enforce 47 USC § 227(d). That section addresses "[t]echnical and procedural standards." The

FCC, in turn, issued the Caller ID requirements found in 47 CFR § 64.1601(e). The FCC did not

specify which TCPA provision the FCC relied on in issuing section 64.1601(e). See

*In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014,

14034 (2003) (announcing implementation of Caller ID requirements in 47 CFR § 64.1601(e)).

But the FCC did observe that Caller ID would "provide an important resource for the FCC and

[Federal Trade Commission] in pursuing enforcement actions against TCPA and [Telemarketing

Sales Rule] violators." *Id.*

Considering this legal and regulatory framework, federal courts have repeatedly found

the Caller ID regulation in 47 CFR § 64.1601(e) is not enforceable through a private right of

action. See, e.g., *Griffin v. Am.-Amicable Life Ins. Co. of Texas*, No. 6:24-CV-00243-MC, 2024

WL 4333373, at *5 (D. Or. Sept. 27, 2024); *Meyer v. Cap. All. Grp.*, No. 15-CV-2405-WVG,

2017 WL 5138316, at *17 (S.D. Cal. Nov. 6, 2017); *Worsham v. Travel Options, Inc.*, No. JKB-

14-2749, 2016 WL 4592373, at *4 (D. Md. Sept. 2, 2016) aff'd by 678 F. App'x 165 (4th Cir.

2017).

In finding that 47 CFR § 64.6400(e) does not provide a private right of action, these

courts have provided numerous reasons supporting this conclusion.

First, courts finding no private right of action have recognized that it is unclear whether

the FCC issued 47 CFR § 64.1601(e) under a TCPA provision containing a private right of

action. See, e.g., *Meyer,* 2017 WL 5138316, at *17. Again, the Supreme Court has said that

"Congress will be explicit if it intends to create a private cause of action." *Ziglar*, 582 U.S. at

137. In conjunction with "the Supreme Court's general guidance," courts have declined to

find that section 64.1601(e) is enforceable through a private right of action.

Although it is possible that the FCC issued section 64.1601(e) under 47 USC § 227(c)'s

general instruction regarding the enforcement of "privacy rights" (which does contain a private right of action), it is also possible that the FCC issued section 64.1601(e) under 47 USC § 227(d)'s provision for "[t]echnical and procedural standards" (which does not contain a private right of action). See, e.g., *Worsham*, 2016 WL 4592373, at *4. Congress specifically titled 47 USC § 227(d) "[t]echnical and procedural standards." As the Third Circuit has made clear, statutory headings are "tools available for the resolution of [ ] doubt" about the meaning of a statute." *Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 891 (3d Cir. 2020). At a minimum, then, it is possible that the FCC issued section 64.1601(e) under 447 USC § 227(d). Again, there is no private right of action to enforce that section. See 47 USC § 227(d).

Second, courts finding no private right of action have recognized that, in promulgating section 64.1601(e), the FCC stated that Caller ID would "improve the ability of consumers to identify and enforce do-not-call rights." See *In re Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991*, 68 FR 44144-01 ¶ 65. In other words, the FCC did not describe Caller ID requirements as arising under one of the TCPA provisions providing a private right of action. Rather, the FCC described the Caller ID requirements as a tool for enforcing the private right of action available for do-not-call claims under 47 USC § 227(c). See *id*.

Until just recently, "every federal court to consider the issue" had found no private right of action for 64 CFR § 64.1601(e) claims. See *Griffin*, 2024 WL 4333373, at *5. Though a very small minority of federal court has recently reached the opposite conclusion. See *Dobronski v. Selectquote Ins. Servs*., No. 2:23-CV-12597, 2025 WL 900439, at *5 (E.D. Mich. Mar. 25, 2025). In so doing, that court criticized other federal courts for relying on *Worsham*'s extensive analysis and on the general weight of authority on this issue. See *id*. at *4.#

Even putting aside the weight of authority, that court's decision is flawed. The court apparently assumed that—if it is unclear whether a statutory provision containing a private right of action covers a regulation—a plaintiff can rely on that provision to enforce that regulation. See *id.*, at *2-5. That's backwards and directly contrary to the Supreme Court's recent decision in *Loper Bright Enterprises, et al. v. Gina Raimondo, Secretary of Commerce, et al. Relentless, Inc. et al. v. Department of Commerce, et al.*, 603 U.S. 369, 144 S. Ct. 2244 (2024). Courts must "assume that Congress will be explicit if it intends to create a private cause of action." See *Ziglar v. Abbasi*, 582 U.S. at 133. What's more, after the FCC issued 47 CFR 64.1601(e), Congress amended the TCPA to specifically address Caller ID  in general. See TRUTH IN CALLER ID ACT OF 2009, PL 111-331, December 22, 2010, 124 Stat 3572. In doing so, Congress specifically chose not to include a private right of actionfor Caller ID claims. See 47 USC § 227(e).

Furthermore, the *Dobronski* court's analysis of the timing of the regulations and statutes is flawed. Regulation 47 CFR § 64.1601(e) took effect on January 29, 2004. The Truth in Caller ID Act of 2009, which added 47 USC 227(e), was not signed into law until December 22, 2010. The courts that recognized a private right of action did so concluding that 47 CFR § 64.1601(e) was promulgated to enforce 47 USC 227(c), which did exist at the time 47 CFR § 64.1601(e) took effect. Therefore this logic is flawed because the FCC was not granted the authority to regulate Caller ID until December 22, 2010, almost 7 years after 47 CFR § 64.1601(e) took effect.

There is no private right of action to enforce 47 CFR § 64.1601(e).

**C. *Moran's class action requests rely on completely unsupported allegations that recorded messages were used to send the calls.***

Under FRCP 23(a), in order for a class to be certified, it must meet the following requirements:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class. Here, Moran's Complaint fails to properly allege that the numerosity requirement. Moran's class action allegations conclude that "Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members for each Class number, at minimum, in the hundreds based on the fact that recorded messages were used to send the calls." Pl.'s Compl., ¶ 47. However, Moran's Complaint previously stated simply that she received a call, that the purpose of the call was to attempt to sell insurance, and that she hung up because she was not interested. Pl.'s Compl., ¶ 28-30. Moran makes no mention of the use of an autodialer or a recorded message. Furthermore, Moran includes a screenshot of the text message that she received shortly after, which includes specific information as to Moran (who had previously requested a call from IPS under the name Mary), such as her fake name and her response to a security question obtained from the lead generator. Pl.'s Compl., ¶ 31. Even accepting all well-pleaded allegations as true and drawing all reasonable inferences in favor of the plaintiff, Moran has failed to allege how a singular instance of one phone call and a follow up text message 4 minutes later proves that the "class is so numerous that joinder of all members in impracticable."

### D. Moran requested information from IPS, thereby excluded herself from the protection of the TCPA.

Under 47 USC 227, the TCPA excludes certain calls from the definition of "telephone solicitation." This includes calls or messages "(A) to any person with that person's prior express invitation or permission, (B) to any person with whom the caller has an established business relationship . . ."

Under 47 CFR § 64.1601(f)(5),

> [T]he term **established business relationship** for purposes of telephone solicitations means a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call or ***on the basis of the subscriber's inquiry or application regarding products or services offered by the entity*** within the three months immediately preceding the date of the call, which relationship has not been previously terminated by either party. (Emphasis added).

On February 28, 2025, Moran requested a call from IPS regarding final expense insurance. During that call, Moran fraudulently stated that her name was "Mary Duran" and that she was 69 years old. She requested a callback during morning hours and stated that she was interested in $20,000 in final expenses insurance. By requesting the call, Moran excluded the call and text message from the definition of "telephone solicitation" and in turn many of the protection of the TCPA, including 47 CFR § 64.1200(c)(2), under which Moran is attempting to recover.

## CONCLUSION

Moran's Caller ID claim is insufficiently pled and lacks a private right of action. Moran's further TCPA claims are outside the proscriptions of the TCPA because they were in response to a request for contact initiated by Moran. Thus, to limit the burden that this case places on the parties and the Court, IPS respectfully requests that this Court dismiss the Caller ID claim with

prejudice, dismiss the TCPA claims with prejudice, and grant any additional relief that this Court finds appropriate.

Respectfully submitted,

Dated: December 29, 2025

COLLIS, GRIFFOR & HENDRA, PC

By */s/ Stuart M. Collis*
Stuart M. Collis (P49530)
1851 Washtenaw Ave.
Ypsilanti, MI 48197
Telephone: (734) 827-1337
scollis@collisandgriffor.com

*Attorneys for Defendant*

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served electronically upon counsel of record by electronic mail on January 2, 2026.

By: */s/ Stuart M. Collis*
Stuart M. Collis (P49530)

EXHIBIT A

# Transcript – February 28, 2025 Phonecall

**20250228-153049_9063222101-all.mp3**

**Lead generator:** [00:00:01] How are you doing today?

**Plaintiff - Trinity Moran:** [00:00:04] Good. How are you?

**Lead generator:** [00:00:06] I'm great. Thank you for asking. [Inaudible] my call to let you know. [Inaudible] local final expense insurance plan, which is designed to cover 100% of your funeral expenses. So [inaudible] can give you a call back to give you more information about this plan in a couple of days. So would that be good to you?

**Plaintiff - Trinity Moran:** [00:00:25] Yes, that would be wonderful.

**Lead generator:** [00:00:27] Just for the qualification purpose, ma'am. How old are you?

**Plaintiff - Trinity Moran:** [00:00:31] 69.

**Lead generator:** [00:00:32] 69. Okay, so can you tell me in the past three years, have you had any kind of major illness like heart attack, stroke or cancer?

**Plaintiff - Trinity Moran:** [00:00:40] No.

**Lead generator:** [00:00:41] Oh. That's great. May God bless you with more health. Ma'am, can you tell me what's the best callback for you? Like in the morning, evening or afternoon?

**Plaintiff - Trinity Moran:** [00:00:48] Morning. Morning.

**Lead generator:** [00:00:49] Morning. Okay. That's great choice, ma'am. If you choose to take coverage, who would be your beneficiary? Like your spouse, your son or your daughter?

**Plaintiff - Trinity Moran:** [00:00:57] My son.

**Lead generator:** [00:00:59] Your son. Okay, that's great choice, ma'am. So can you tell me, how do you pronounce your first or last name?

**Plaintiff - Trinity Moran:** [00:01:05] Mary Duran.

**Lead generator:** [00:01:08] Mary Duran. Okay, Mary. So can you tell me what's your [inaudible] zip code over there?

**Plaintiff - Trinity Moran:** [00:01:13] 49715

**Lead generator:** [00:01:19] 49715. Okay, ma'am, can you tell me your best callback numbers like (906) xxx-xxxx (redacted). Right.

**Plaintiff - Trinity Moran:** [00:01:26] Yes. That's correct.

**Lead generator:** [00:01:28] Okay, ma'am. So can you tell me for security purposes, you know, it's our agent. When he will give you a call back, they will mention your favorite food as a security phrase. So can you tell me what is your favorite food? What do you like to eat?

**Plaintiff - Trinity Moran:** [00:01:41] Mashed potatoes.

**Lead generator:** [00:01:43] Mashed potato. Okay, that's great choice. Okay, ma'am. So can you tell me, like, on which plan you would like to receive more information? Like on a plan of $5,000, $10,000 or $20,000 in coverage. Do you have any idea about it right now?

**Plaintiff - Trinity Moran:** [00:01:58] $20,000.

**Lead generator:** [00:02:00] Okay. Can you tell me just for the mailing purpose, what is your street address like? Your physical address?

**Plaintiff - Trinity Moran:** [00:02:07] ███████████████ Road.

**Lead generator:** [00:02:16] ████████ road, right? Yes. Okay, so can you tell me, like I do believe you? You can tell me. Do you use any kind of active saving or a second bank accounts?

**Plaintiff - Trinity Moran:** [00:02:28] Yes, I have both.

**Lead generator:** [00:02:30] Okay. That's great. So can I have one of my licensed agent will give you a call back on your same number, like (906) xxx-xxxx within the next 24 to 48 hours. Even if your number is registered on any state federal National do not call list. Okay.

**Plaintiff - Trinity Moran:** [00:02:45] Okay. Yes. That would be wonderful. Thank you so much.

EXHIBIT B

← **(906) 322-2101**  ⋮

texts here?

10:49 AM

I'm Mary, who you spoke to earlier. I have received dozens of spam calls offering me different final expense plans. I am actually 23 years old and on the do not call list. Do you have a good contact for your company? Attached is a TCPA complaint. Please contact me to resolve this as soon as possible

Trinity Moran
4801 W 7 Mile Road
Brimley, MI, 49715
906-322-2101
trinitymoran@gmail.com

**Insurance Protection Specialists**
April Law, agent

**Subject:** Demand to Cease Calls and Payment of Damages for Violations of the National Do Not Call Registry

Dear Insurance Protection Specialists LLC.,

I am writing to formally notify you of your violation of federal telemarketing laws, specifically the Telephone Consumer Protection Act (TCPA) and associated rules regarding the National Do Not Call Registry. I have been registered on the National Do Not Call List since August of 2022.

I have received 2 spam calls/texts asking for my personal information on behalf of enrolling with Marketplace insurance with you and/or your agency. These spam callers continue to call me after I request that they stop.

The TCPA prohibits telemarketing calls to numbers listed on the Do Not Call Registry, and each violation may result in a civil penalty of up to $1,500. Given the documented calls received from your customers without my consent, I am demanding that you:

1. **Immediately cease and desist** from all communications to my number, 906-322-2101.
2. **Compensate me** in the amount of $3,000.00, calculated as $1,500 per call.

If you fail to comply with this demand within 10 days from the date of this letter, I will have no choice but to pursue all available legal remedies, including filing a complaint with the Federal Trade Commission (FTC) and initiating a lawsuit in federal district court for statutory damages, attorney's fees, and any other applicable relief.

I trust that you will give this matter your immediate attention, and I look forward to resolving this issue promptly. I have attached a log of all calls received from telemarketers working on your behalf.

Sincerely,
Trinity Moran

