### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| TRINITY MORAN, individually and on behalf of all others similarly situated, : | |
| : | CIVIL ACTION FILE NO. 2:25-cv-00258 |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| INSURANCE PROTECTION SPECIALISTS : | |
| : | |
| Defendant. : | |
| : | |
| _____/ | |

**Plaintiff's Response in Opposition to Defendant's Motion to Dismiss**

## I. INTRODUCTION

Defendant's motion seeks dismissal of Plaintiff's TCPA claims by asking this Court to adopt legal positions that have been rejected by multiple courts, including in decisions addressing the same caller-identification regulation at issue here. Indeed, Defendant Insurance Protection Specialists' ("IPS") motion to dismiss is almost identical to that of another Defendant, JR Capital's (unsuccessful) motion to dismiss in another case involving Plaintiff's counsel, *Newell v. JR Capital LLC*, filed in the United States District Court for the Eastern District of Pennsylvania. The *Newell* Court denied JR Capital's identical motion in a reported opinion. *Newell v. JR Cap., LLC*, 791 F. Supp. 3d 571 (E.D. Pa. 2025). The motion should be denied in its entirety for much the same reasons as it was denied in *Newell*.

At the pleading stage, those allegations plausibly state claims under the TCPA and its implementing regulations. Defendant's attempts to (1) exempt telemarketing text messages from 47 C.F.R. § 64.1601(e), (2) eliminate the private right of action Congress authorized under 47 U.S.C. § 227(c)(5), (3) litigate class certification issues such as numerosity on a Rule 12(b)(6) motion, and (4) resolve a contested consent defense based on extrinsic materials all fail as a matter of law and procedure.

The motion should be denied.

## II. FACTUAL BACKGROUND

Plaintiff Trinity Moran filed this Class Action Complaint on November 10, 2025, alleging violations of the Telephone Consumer Protection Act (TCPA) by Defendant Insurance Protection Specialists. (ECF 1). That Complaint alleges two causes of action: one for violations of the TCPA's Do Not Call Registry requirements, and a second for violations of the TCPA's Caller ID requirements. Defendant seeks to dismiss the Caller ID claims on the specious, and rejected basis that there is no cause of action for those claims, as well as seeks to dismiss the

underlying do not call claims based on a misapprehension of Rule 23's numerosity requirement as well as disputed allegations that the Plaintiff received only one call.

### III.    LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint that fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rather than require detailed pleadings, the Rules demand only a "short and plain statement" of the claim showing that the pleader is entitled to relief, in order to give defendant fair notice of what the claim is and the grounds upon which it rests, not detailed factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 678 (cleaned up). In determining whether a claim is plausible, the court must "draw on its experience and common sense." *Id.* at 678. A complaint may be dismissed only where it appears that there are not "enough facts to state a claim that is plausible on its face," not merely because of contrary facts. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### IV.    ARGUMENT

A.    *47 C.F.R. § 64.1601(e) applies to text messages, as confirmed by the FCC.*

Defendant first argues, in a section copied practically verbatim entirely from *Newell*, that the Plaintiff's case should be dismissed because Section 1601(e) does not apply to wireless text messages based on a reading of Section 1601(a), and, relatedly, that the failure to identify itself

2

did not harm Plaintiff.[1]

Those arguments are easily dispensed with, as the *Newell* Court did. As it explained:

[T]he text of the regulation itself shows that subsection (a)'s criteria do not apply to (e). The introduction of subsection (a) specifically states in a preamble, "Except as provided in paragraphs (d) and (e) of this section: ..." 47 C.F.R. § 64.1601(a). By using the term "except," the FCC clearly meant that the PSTN limitations in subsection (a) do not apply to (e).

Subsection (e) is also distinct from the rest of the section based on whom it regulates. Subsections (a)-(d) apply only to telecommunications carriers or providers, defined as "any provider of telecommunications services." 46 U.S.C. § 153(51) (defining "telecommunications carrier" for Title 47, Chapter 5 of the U.S. Code, which includes the TCPA). In contrast, subsection (e) applies to "[a]ny person or entity that engages in telemarketing." 47 C.F.R. § 64.1601(e). Thus, the regulated entities in (a) and (e) are different. Were subsection (a)'s limitations incorporated automatically into (e), the caller ID requirement would only cover *telecommunication carriers* that engage in telemarketing *over the PSTN.* But the FCC did not intend to severely limit subsection (e) in this way. As set forth in the 2003 TCPA Order, "[t]he new rules will also require *all companies* conducting telemarketing to transmit caller identification (caller ID) information." ¶ 1 (emphasis added); *see also id.* ¶¶ 173-184 (discussing the FCC's decision to require telemarketers to transmit caller ID). Subsection (e) is therefore a distinct subsection, not subject to either the PSTN or telecommunication carrier requisites of subsection (a).

Additionally, in its 2003 TCPA Order accompanying § 64.1601(e), the FCC commented that it decided to "require all sellers and telemarketers to transmit caller ID information, *regardless of their calling systems.*" 2003 TCPA Order at ¶ 179 (emphasis added). This shows that the FCC did not intend to limit (e)'s caller ID requirement to a specific calling system or technology but wanted it to apply broadly to telephonic telemarketing regardless of the technology used.

Finally, the meaning of technical terms used within subsection (e) also show that (e) applies to text messages. Under § 64.1601(e), "[a]ny person or entity that engages in telemarketing ... must transmit caller identification information." Caller identification information is defined as "information provided by a caller identification service regarding the telephone number of, or other information regarding the origination of, a call made using a voice service *or a text message* sent using a text messaging service." 47 C.F.R. § 64.1600(c) (emphasis added). Therefore, § 64.1601(e) specifically covers text messages.

Based on these collective factors, it is evident that the PSTN limitations in subsection (a)

---

[1] In fact, IPS' motion is pretty clearly copied from the unsuccessful motion in that case that it doesn't even bother to change the name from "JR Capital" in Footnote 2

3

do not apply to (e), and telemarketing text messages must comply with § 64.1601(e)'s caller ID requirements. Dismissal is not warranted on this ground.

*Newell v. JR Cap., LLC*, 791 F. Supp. 3d 571, 583–84 (E.D. Pa. 2025).

This Court should decline IPS' attempts to relitigate *Newell*, and even so, it is easy to see why the *Newell* Court got it right. As an initial matter, no part of 47 C.F.R. § 64.1601(e) purports to require that a call transit the PSTN in order to be actionable. The requirements Defendant cites which reference the PSTN appear in 47 C.F.R. § 64.1601(a), which impose "delivery requirements" on "Telecommunications carriers and providers of interconnected Voice over Internet Protocol (VoIP) services" and "intermediate providers" as opposed to "privacy restrictions" contained in 47 C.F.R. § 64.1601(e). Indeed, Defendant curiously *omits the limiting language* found at the outset of 47 C.F.R. § 64.1601(a), which states that, "*except as provided in paragraphs (d) and (e)* of this section," indicating that Section 64.1601(e) is explicitly *omitted* from the PSTN requirements of 47 C.F.R. § 64.1601(a).

And, the *Newell* Court also explained why the inclusion of the Defendant's alias and website were insufficient under the statute, as well, precisely as IPS argues:

> Newell included screenshots of the five text messages at issue from JR Capital in his Amended Complaint. Am. Compl. ¶ 26. Four texts have a customer service call-back number, complying with that requirement of § 64.1601(e). However, none of the texts include the name of the seller or telemarketer – in this case, JR Capital – as required. Each text includes a website link to "jrwcap.com/equipment." But this is inadequate under § 64.1601(e). First, the website domain "jrwcap.com" is different than the company's name "JR Capital." This url is not "the name of the seller," as required. 47 C.F.R § 64.1601(e)(1). And though clicking the link immediately leads you to JR Capital's website, this puts the onus – and risk of being the target of malware and phishing scams – on the recipient of the text. This stands in contrast with the clear purpose of the TCPA to protect consumers from nuisance calls and protect consumer privacy. *See* S. Rep. 102-178, at 5 (1991); *see also Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (discussing TCPA's purpose of curbing calls that are a nuisance and an invasion of privacy).
>
> The administrative record further demonstrates that the FCC considered website urls as a form of compliance with § 64.1601(e)'s identification requirements, but did not

4

> implement that option. In response to the FCC's 2002 NPRM soliciting comments on proposed caller ID regulations, one commenter "argued that a company's website information should be [ ] permitted as a substitute for the name and phone number." 2003 TCPA Order at ¶ 177. Despite this specific request, the version of § 64.1601(e) promulgated did not include website urls as a compliance option.
>
> The TCPA is a remedial statute, and thus "should be construed to benefit consumers." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013). Interpreting TCPA regulations to allow an ambiguous website url to satisfy § 64.1601(e)'s identification requirement would contravene this directive, Congress's clear intent to protect consumer privacy, and the FCC's specific choice to exclude website urls. Mr. Newell therefore adequately pleads that these five text messages violate § 64.1601(e)'s caller ID requirements.

*Id.* at 584–85. It's easy to see why the *Newell* Court got the analysis right here, too. First, to state the obvious, "IPS" is not the name of the Defendant. It's a cryptic acronym that could just as easily mean "Intrusion Prevention System" or "Institute for Public Service." The *content* of a call is plainly not the same as the caller ID sent *with* a call, and the regulation at issue makes it illegal to fail to send a caller ID name; it says nothing of the content of the call, which is governed by a separate section of the TCPA entirely. 47 CFR § 64.1200(d)(4). And, though, like in *Newell*, the text message Plaintiff received included a web address (this says nothing of the call Plaintiff received beforehand, either), the web address does not identify the Defendant by name, either. The rise of internet-based and digital threats, coupled with the guidance of the FCC, FTC, FBI, and numerous states, has wisely counseled against clicking unknown links provided over the phone and in text messages. It is basic good computing practice not to click unknown links in text messages, and the link here does not identify the caller.

    As the FCC has explained, "If the information required is not passed through to the consumer, through no fault of the telemarketer originating the call, then the telemarketer will not be held liable for failure to comply with the rules." *Id.* However, here, the Plaintiff has pled, and demonstrated, the opposite: the telemarketer originating the call did not pass the information

required, *through its very own fault*, because it failed to avail itself of properly setting the Caller ID name functionality provided by its telephone carrier. (Compl. ¶ 25, 26). The fact remains that the relevant regulation here is tied to proving what *was* transmitted, not whether the Plaintiff *received* the transmission. And if what the Defendant transmitted was something inaccurate and did not meet the requirements of the regulation, it is *that action* which violates the plain text of the statute. The statute speaks of what a "person or entity" "transmits," not what the recipient of the call receives, nor does it qualify a violation on whether the recipient receives the information. 47 CFR § 64.1601(e). And a geographic location is plainly not the "name of the telemarketer," which the statute requires to be transmitted. 47 CFR § 64.1200(1). If anything, transmitting a geographic location shows that the functionality to transmit a name *was* available by the telemarketer's carrier, but the telemarketer impermissibly transmitted something else, a geographic location, instead of its name, as required.

Defendant's argument improperly conflates *receipt* of caller identification information with the statutory duty to *transmit* compliant caller identification information. Section 64.1601(e) imposes a duty on "[a]ny person or entity that engages in telemarketing" to **transmit** caller identification information that includes, when available, the name of the telemarketer. 47 C.F.R. § 64.1601(e)(1). Liability attaches at the point of transmission, not based on whether the recipient later receives identifying information through other means or within the body of a text message.

The Complaint specifically alleges that Defendant's carrier made CNAM functionality available, but Defendant failed to transmit its name and instead transmitted only a geographic placeholder. (ECF No. 1 ¶¶ 34–36). That allegation states a straightforward violation of the regulation's transmission requirement and is sufficient to plead liability under § 64.1601(e)

regardless of any identifying content contained within the text message itself.

B.  *Section 227(c) of the TCPA provides a private right of action for violations of 47 C.F.R. § 64.1601(e). That Regulation was promulgated under Section 227(c), which contains a private right of action.*

Defendant also ignores the fact not only that the *Newell* Court held that there exists a private right of action for the instant Caller ID provisions, but also ignores that the jurisprudence holding that such a right of action exists originated in the Eastern District of Michigan. Recently, the Eastern District of Michigan undertook a comprehensive analysis of the genesis of the private right of action for caller ID claims under 47 C.F.R. § 64.1601(e) in *Dobronski v. Selectquote Ins. Servs.*, 773 F. Supp. 3d at 375. *Selectquote* represents the most comprehensive analysis of Section 1601(e) undertaken by a Court to date. In *Selectquote*, Judge Murphy thoughtfully analysed and explained the promulgative authority for the private right of action under Section 64.1601(e) as under Section 227(c) of the TCPA. Since *Dobronski*, every single court to consider a Section 64.1601(e) caller ID claim has held that there is a private right of action for violations thereof, including Judges Parker and Berg of the Eastern District. *Newell*, 791 F. Supp. 3d at 582; *Dobronski v. CHW Grp., Inc.*, 2025 WL 2426370, at \*7; *Dobronski v. Juliasangel Mktg., LLC*, No. 2:24-CV-12379-TGB-APP, 2025 WL 2659265, at \*11 (E.D. Mich. Sept. 17, 2025); *Barton v. Bright Solar Marketing LLC*, No. 3:25-CV-05310-DGE, 2025 WL 2880136, at \*5 (W.D. Wash. Oct. 9, 2025).

*Selectquote* and its progeny have thoroughly addressed and rejected the reasoning adopted by the citations relied on by the Defendant, again, all of which were copied wholesale from the briefing in *Newell*. This Court should continue to adopt the same reasoning embraced by every single Court to have considered the issue post-*Selectquote*.

In sum, Defendant's argument fails because it's clear that Section 1601(e) was

7

promulgated pursuant to authority granted in 47 USC § 227(c). As a codified federal regulation dealing with "telemarketing," and with explicit references to the definitions promulgated under the TCPA in 1991 in 47 C.F.R. § 64.1200(f)(13), this particular regulation must have been promulgated under *some* part of the TCPA. "It is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). In this regard, only a handful of subsections of the TCPA allow for the promulgation of regulations:

- § 227(b)(2) authorizes the FCC to implement requirements that relate to the use of prerecorded voices and automatic telephone dialing systems;
- § 227(c) authorizes the FCC to promulgate rules relating to the "need to protect residential telephone subscribers' privacy rights";
- § 227(d)(1)–(3) allow regulations relating to technical and procedural standards related to fax machines, automatic telephone dialing systems, and "systems that are used to transmit any artificial or prerecorded voice message";
- § 227(e)(3) provides for regulations relating to misleading or inaccurate caller ID; and
- § 227(i) allows for the FCC to promulgate regulations to streamline information sharing with the FCC related to violations

*Dobronski*, 773 F. Supp. 3d at 376. As the Court observed in *Dobronski*, all but § 227(c) are quickly eliminated as not even remotely applicable to the statutory provision here. The statutory provision at issue here could not have been promulgated pursuant to Section 227(d), because that Section relates only to fax machines and automatic telephone dialing systems, not to telemarketing calls in general, just as Section 227(b), which is inapplicable for identical reasons. Section 227(e)(3), though it deals with Caller ID, was enacted *after* § 64.1601(e), so that's out. And, finally, the transmission of accurate caller ID name has nothing to do with information sharing with the FCC relating to violations contained in Section 227(i). *Id.*

As the *Newell* Court explained, addressing *Worsham* and the interplay with *Alexander*:

In my view, *Worsham* misunderstands the structure of the statute. In § 227(c), Congress explicitly delegated to the FCC the authority to evaluate different methods and procedures to protect privacy rights – including network technologies – and issue appropriate regulations. If § 64.1601(e) is promulgated as a "method or procedure" to

8

> "protect residential telephone subscribers' privacy rights," it fits under § 227(c) and a private cause of action exists. And the administrative record establishes that the FCC viewed caller ID as a "network technology" that Congress *required* the FCC to evaluate as a method and procedure to protect consumer privacy under § 227(c). Thus, caller ID fits into § 227(c), even if (c) does not mandate that the FCC adopt technological methods and authorizes non-technological methods and procedures as well. *See also Dobronski*, 773 F.Supp.3d 373 (concluding, on a motion for reconsideration, that § 64.1601(e) was promulgated under § 227(c), and rejecting *Worsham*'s technology-focused arguments).
>
> Further, § 227(d) only applies to telemarketing made using specific technologies – fax machines, automatic telephone dialing systems, and artificial and prerecorded voice messages – whereas § 64.1601(e) applies to a broader range of telemarketing calls, including traditional manually dialed telemarketing calls. The Third Circuit has cautioned that "our starting point [in regulatory interpretation] is to attempt reconciliation of seemingly discordant statutes and regulations." *LaVallee Northside Civic Ass'n v. Virgin Islands Coastal Zone Mgmt. Comm'n*, 866 F.2d 616, 623 (3d Cir. 1989). It is difficult to discern how § 64.1601(e) could have been lawfully promulgated under § 227(d) without exceeding the FCC's delegated authority. Section 64.1601(e) thus fits best under § 227(c), not (d).
>
> *Worsham* does not grapple with these issues, but attempts instead to have § 64.1601(e) straddle two sections of the statute, an outcome for which I can discern no legal authority. The regulation fits comfortably within § 227(c), which supports the existence of a private right of action.

*Newell*, 791 F. Supp. 3d at 579.

Moreover, Defendant neglects to point out that the FCC enacted the instant caller ID regulations *in the very same document that created the National Do Not Call Reigstry*, for which Defendant *concedes* Congress granted the FCC appropriate authority under Section 227(c). A review of the appropriate legislative history confirms that the instant regulation here was promulgated in 2003 under rulemaking Congress explicitly authorized when it passed the Do Not Call Implementation Act of 2003, 15 U.S.C. § 6153 ("2003 Act"), which related to *consumer privacy*, the mainstay of Section 227(c). Pursuant to that mandate, the FCC began a rulemaking proceeding that expressly sought comment on whether "network technologies have been developed over the last decade," and which ultimately resulted in an order promulgating the implementation and incorporation of the instant caller ID rulemaking, as well as Do Not Call

9

Registry rules. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2003 TCPA Order"), CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14118. As the FCC explained in that 2003 TCPA Order rulemaking proceeding, "The new rules will also require all companies conducting telemarketing to transmit caller identification (caller ID) information, when available, and prohibits them from blocking such information." *Id.* at 14017.

Indeed, given that the 2003 TCPA Order at issue here was the *very same Order* that established the National Do Not Call Registry, and the corresponding statutory subsection at 47 C.F.R. § 64.1200(c)(2), under which Defendant concedes "Congress created an express private right of action," it would be incongruous to hold that the *same rulemaking proceeding* which created the Do Not Call Registry and its private right of action at the same time did not create a private right of action for its caller ID requirements. The *very order* that the Defendant cites for authority for the creation of the private right of action for violations of the Do Not Call Registry itself *also* promulgated the regulation here for violations of the Caller ID requirements found in § 64.1601(e). The 2003 TCPA Order took that congressional mandate to align the FTC and FCC's rules seriously, including with respect to the *very caller ID provision at issue*, by observing that the "FTC also adopted new rules on the use of predictive dialers and the transmission of caller ID information. . . . Telemarketers will also be required to transmit the telephone number, and, when made available by the telemarketer's carrier, the name of the telemarketer, to any caller identification service." 2003 TCPA Order, 18 F.C.C. Rcd. at 14024. Consistent with the Committee's intent, Congress required the FCC to issue the 2003 TCPA Order, a "final rule pursuant to the rulemaking proceeding that it began on September 18, 2002, *under the Telephone Consumer Protection Act* (47 U.S.C. 227 et seq.)." 15 U.S.C. § 6153 (emphasis added). It further directed that, "In issuing such rule, the Federal Communications Commission shall consult and

10

coordinate with the Federal Trade Commission to maximize consistency with the rule promulgated by the Federal Trade Commission." *Id.* As explained above, the FCC explained that part of that alignment included adoption of caller ID rules similar to those promulgated by the FTC in the Telemarketing Sales Rule. The regulation under which Plaintiff sues here flows naturally from Congress' mandate to ensure consistency between FTC and FCC regulations.

And under the 2003 Congressional mandate, the FCC promulgated the instant regulation, 47 C.F.R. § 64.1601(e), pursuant to its authority *under* the TCPA, and pursuant to the *explicit authority* Congress in 2003 gave the FCC to conduct rulemaking *"under"* the TCPA, not just with respect to the Do Not Call Registry, but the other consumer privacy rulemaking Congress empowered the FCC to promulgate. 15 U.S.C. § 6153; s*ee also Siringi v. Parkway Fam. Mazda/Kia*, No. CV H-23-1499, 2023 WL 7130867, at *2 (S.D. Tex. Oct. 30, 2023) ("The Federal Communications Commission promulgated 47 C.F.R. § 64.1200 under its authority to implement the Telephone Consumer Protection Act."). The plain text of the 2003 Act, as well as the FCC's resultant 2003 TCPA Order, *supra*, belies the Defendant's contention that those rules were not issued pursuant to authority from Subsection 227(c) the TCPA. Reading the 2003 Act as empowering regulations *under the TCPA's Section 227(c)* fits with how statutes, amendments, and administrative rulemaking works–the authorizing statute does not become the base statute or amendment, nor does the authorized rule. *See Alexander v. Sandoval*, 532 U.S. 275, 286, 291 (2001) (explaining genesis of a right of action). And it is the plain meaning evident from the text.

For those reasons, the Court should held that there exists a private right of action for violations of the TCPA's caller ID regulations.

C.      *Defendant misapprehends numerosity.*

11

Next, IPS attempts to dismiss this case in a confusing section that, as best Plaintiff can ascertain, attempts to dismiss the class claims on the basis that the class is not sufficiently numerous because Plaintiff pleads only the receipt of two calls. This argument fails on two procedural aspects.

*First*, Defendant's relief isn't appropriate at this stage. Defendant mounts a Rule 12(b)(6) challenge to an element of Rule 23's class certification analysis, numerosity. That puts the cart before the horse. *Lasalle Town Houses Co-op. Ass'n v. City of Detroit ex rel. Detroit Water & Sewerage Dep't*, No. 12-CV-13747, 2014 WL 824917, at *6 (E.D. Mich. Mar. 3, 2014) ("Rule 12(b)(6) arguments concerning the reasonableness of its classification are more appropriate at the Rule 56(c) stage or at trial when the parties have had an opportunity to develop the factual record."). "While [a] district court has broad discretion in certifying class actions, *it must exercise that discretion within the framework of Rule 23*." *Coleman v. GMAC,* 296 F.3d 443, 446 (6th Cir. 2002) (emphasis added). This is consistent with the Supreme Court's counsel that a district court must conduct a "rigorous analysis" of the Rule 23 requirements. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). And conducing that "rigorous analysis" entails discovery into the class claims, including calling records to show numerosity.

*Second*, Defendant seems to misapprehend what numerosity entails. Numerosity does *not* speak to the number of calls the Plaintiff received. Were that the case, any plaintiff would simply file an individual claim alleging one or two calls. Instead, the numerosity requirement speaks to the number of potential class *members* who received calls, not the number of calls each member received. Pursuant to Rule 23(a)(1), the numerosity requirement is satisfied when "the class is so numerous that joinder of *all members* is impracticable." The modern trend for meeting the numerosity factor is to require at a minimum "between 21 and 40" class members. *See Rodriguez*

12

*v. Berrybrook Farms, Inc.*, 672 F.Supp. 1009, 1013 (W.D. Mich. 1987). In another TCPA case, for example, the Court held that sending a "single-page fax" to "more than 6,000 unique fax numbers" was sufficient to meet the numerosity requirement. *Compressor Eng'g Corp. v. Thomas*, 319 F.R.D. 511, 525 (E.D. Mich. 2016). As explained by the Supreme Court in *Dukes*, without an analysis of the Defendant's calling records, it is impossible for the Plaintiff to state the exact number of individuals who Defendant called. However, based on the indicia of the calls the Plaintiff received, including their apparent mass-dialed and generic nature, it is fair to conclude at the pleadings stage that there are at least the twenty to forty odd class members required for certification, and in all likelihood, many, many more.

For the foregoing reasons, the Court should not dismiss the class claims on alleged lack of numerosity grounds and reserve that ruling for the appropriate time, at class certification and after discovery.

D.     *Plaintiff did not consent to receive calls from IPS.*

Defendant claims that, on February 28, 2025, the Plaintiff allegedly "requested a call *from IPS* regarding final expense insurance," and thus that Plaintiff's complaint is subject to dismissal because the Plaintiff allegedly consented. That assertion is particularly curious, even if the Court were to consider the extrinsic evidence that IPS has attached as Exhibit A, and which the Court isn't even permitted to consider at the motion to dismiss stage. *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005) (holding a court may generally not consider extrinsic evidence on a motion to dismiss). Notably, <u>no part</u> of that hearsay exhibit contains *any* indication that it was placed by IPS. Instead, it is a call between a purported self-described and unnamed "Lead generator" and "Plaintiff – Trinity Moran." This is not to mention that, at the

13

motion to dismiss stage, the Court is required to treat the Plaintiff's assertion that she did not provide consent in any manner, Compl. ¶ 37, as true.

Most importantly, under the TCPA, consent is an *affirmative defense* that a plaintiff is *not* required to plead in order to assert a *prima facie* case at the pleadings stage for violations of the TCPA. *Dahdah v. Rocket Mortg., LLC*, No. 22-11863, 2024 WL 4299564, at *6 (E.D. Mich. Sept. 26, 2024). As a result, that is not a basis on which the Court may dismiss the complaint, because a 12(b)(6) challenge goes to the sufficiency of what the Plaintiff has pled as to the *affirmative* elements of the Plaintiff's claim. *See id.* A court can only grant a motion to dismiss based on an affirmative defense where the plaintiff has pleaded all elements of the affirmative defense in her complaint. *See, e.g.*, *Franklin v. Depaul Univ.*, No. 16 C 8612, 2017 WL 3219253, at *4 (N.D. Ill. July 28, 2017) (denying a motion to dismiss where, as here, the complaint stated that the plaintiff never provided his phone number to the defendant or gave prior consent to be called); *Kolinek v. Walgreen Co.*, No. 13 C 4806, 2014 WL 3056813, at *4 (N.D. Ill. July 7, 2014) (rejecting the defendant's prior express consent defense because the court was required to take the plaintiff's allegation that he did not consent to automated calls as true for purposes of the motion to dismiss). Ms. Moran's complaint makes no concession that she provided her prior express written consent to receive telemarketing calls. To the contrary, she disclaims that fact.

Next, on face, the call recording is inadmissible hearsay. *Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 506 (6th Cir. 2014) ("In general, it is improper for a court to consider hearsay statements when ruling on a motion to dismiss."). IPS has not explained from where it obtained this purported "call," who the "Lead generator" is (if it even is IPS), or even if this was a call recording with IPS as an initial matter. It does not explain how it obtained this purported "recording," from where it was obtained, and doesn't even provide the

14

actual recording or call records itself to substantiate (1) that the call even took place at all, or (2) that the call was with the Plaintiff herself.

Second, even assuming that the call is, *arguendo*, one that the Plaintiff did have, <u>no part</u> of the call indicates that the Plaintiff herself asked to receive a call *from IPS,* or anyone at all. But, by IPS' very own admission, the call through which it claims IPS obtained consent or some sort of business relationship or inquiry *does not mention IPS*. Before a telemarketer like IPS can send the telemarketing calls complained of, it must first obtain the consumer's written consent to receive such telemarketing calls **from a specific seller**. *See Larson v. Harman Mgmt. Corp.,* No. 1:16-cv-00219-DAD-SKO, 2016 U.S. Dist. LEXIS 149267, *5-7 (E.D. Cal. Oct. 26, 2016) (quoting 47 C.F.R. § 64.1200(f)(8)); *In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991,* 27 FCC Rcd. 1830, 1844 at ¶33 (2012) (recognizing that consent must include clear and conspicuous disclosure that the consumer is consenting to receive future telemarketing calls **from a specific seller**). Indeed, Defendant's own citation to 47 CFR § 64.1601(f)(5) echoes this requirement that the "products or services" be offered "*by the entity*," and here, the recording transcript reflects *no identifiable "entity"* whose "products or services" are being offered.

The rationale for the specific seller rule is obvious. Without naming a specific seller, a telemarketer could rely on any old generic call between an individual seeking information about a specific service to justify a call from anyone on earth selling that particular service, and thereby sidestep the National DNC registry and specific consent requirements under the TCPA. That would be absurd. *Mantha v. QuoteWizard.com, LLC*, 347 F.R.D. 376, 397 (D. Mass. 2024) ("Two examples illustrate the point. First, consent to receive texts from Chevrolet is not consent to receive texts from Mercedes. . . . Second, consent to a text from one auto manufacturer (or several)—which is akin to what occurred here, where many of the alleged consent forms purport

15

to authorize calls by unidentified entities of a particular type (e.g., insurance companies)—is of no assistance. . . . [Defendant] cannot establish (without speculation or guesswork) that only the specified number of companies relied on the form.").

Indeed, the failure to identify IPS notwithstanding, the lack of temporal proximity makes it clear that there is no nexus between the caller, who stated that the Plaintiff would receive a call within "24 to 48 hours," and IPS, who called *almost a month later*. What IPS is claiming, in essence a purported telephone call seeking information about "final expense insurance" from one company as consent to receive calls almost a month later from IPS, is exactly akin to a telephone call to a Chevrolet dealership about "purchasing a car" as purported consent to get a telephone call almost a month later from a Mercedes dealership because that dealership thought the caller might still be interested in a car.

Thus, not only is the issue of consent a factual issue inappropriate for adjudication at the pleadings stage, as a legal matter, the (inadmissible hearsay) "evidence" of purported "consent" obtained flunks on the legal requirements of admissibility and adequacy under the TCPA and similarly provides no basis for granting dismissal.

## V.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss. In the alternative, to the extent the Court identifies any pleading deficiency, Plaintiff requests leave to amend, consistent with the liberal standard of Rule 15(a).

Dated: February 4, 2026

                                              PLAINTIFF, individually and
                                              on behalf of others similarly situated,

By:

*/s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
[o] (617) 485-0018
[f] (508) 318-8100
anthony@paronichlaw.com

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

February 4, 2026

*/s/ Anthony Paronich*